ROBERT CARLISLE AND OTHERS v. MARY HART, ADM'X., AND
                         OTHERS.

Where the final title to a league of land was issued to T. H., one of the heirs
of a deceased colonist, to whom the concession had been made, and the
other heirs of said decedent claimed that T. H. held the legal title in trust
for the benefit of all the heirs, the law will charge them with the know-
ledge of the fact that the title was issued to T. H. from the time that they
might have ascertained it by the ordinary diligence used by most persons
in their own affairs.

The fact that the other heirs were of lawful age, and residents of the town
where the title was issued at the time of its issuance, would charge them
with the knowledge of the fact that T. H. had procured the title to be
issued in his own name, at that time or soon thereafter.

It seems to have been held by this court that such equitable rights as are
asserted by the other heirs in the above stated case, are not without the bar
of the statute of limitations, and a failure to prosecute a suit therefor for
ten years from the accrual of the cause of action, will conclude a re-
covery.

But whether such cases come strictly within the statute or not, it cannot be
questioned that it furnishes the analogy by which courts are guided in ad-
judicating upon them.

After the lapse of ten years from the accrual of such rights, the courts will
not grant relief without proof of facts showing an equitable excuse or jus-
tification of the delay.

Where, after the lapse of twenty years from the issuance of the title, the
parties in the above stated case asserted their equitable rights by entry and
suit, and assigned as an excuse for the delay that the county, in which the
land lay, was disorganized; and it appeared in proof that ten years had
elapsed, after the organization of the county, before the assertion of their
rights, it was held that the showing was not a sufficient excuse for delay.

Under such circumstances, and without other excuse for delay, such equitable
rights, if not technically barred by the statute of limitations, must be re-
garded, at least, as a stale demand, which courts of equity will not enforce.

ERROR from Victoria. Tried below before the Hon. Fielding
Jones.

This was an action of trespass to try title to recover a league
of land situated in the county of San Patricio, instituted in the
District Court of that county by Mary Hart, administratrix

of the estate of Timothy Hart, deceased, and by the heirs of said decedent against Robert Carlisle and Mary, his wife. The petition was filed on the 22d day of September, A. D. 1855. The venue was changed to the county of Nueces, where trial was had, verdict and judgment for defendants, and a new trial granted. The venue was then changed to the county of Victoria.

The defendants pleaded "not guilty," and charged that Timothy Hart, the intestate and ancestor of plaintiffs, had fraudulently procured the title to the land in controversy to be issued to him by the commissioner of the Colony of Power and Hewitson.

On the 15th day of December, 1857, Mary Carlisle and some seven others filed a plea of intervention, alleging that they, as the heirs of Mary Hart, deceased, the mother of Timothy Hart, were entitled to distributive shares of the land in controversy; that the said Mary Hart, in her lifetime, obtained a concession for a league of land as a colonist, and died before the final title was issued to her; that after her death, Timothy Hart, the ancestor of plaintiffs, the only surviving son, applied for and obtained a title to said league of land in his own name, as heir of said Mary Hart, deceased; that the title to said league, though made to Timothy Hart as the only heir, yet was for the benefit of all the heirs; that Timothy Hart, by means of false and fraudulent representations to the commissioner that he was the sole and only heir, obtained the grant to himself in fraud of the rights of intervenors; and further alleged that intervenors had incurred their proportion of the expense in obtaining the title to the league, and prayed that the league be divided, and their respective shares set apart to each.

The plaintiffs, by way of replication and amendment, averred that Timothy Hart, under whom they claimed, obtained a good and legal title to the league as the heir of his mother, Mary Hart; that the title was issued to him in his own name, in pursuance of an agreement and understanding with the other heirs of the said Mary Hart, and for a good and valuable consideration; that he had held and continued to hold and claim the same for himself, from the time the title was issued up to his death, and since that time his heirs and administratrix have held and continued to hold

and claim the same without interruption, except by the trespass complained of in their original petition.

On the trial, the plaintiffs read the grant issued by the commissioner of the Colony of Power and Hewitson, on the 20th day of November, 1834, to Timothy Hart, "as heir of his deceased mother, Mary Hart." It was admitted that Carlisle entered upon the land in controversy on the 1st day of June, 1855; that the children of Timothy Hart, and also the intervenors, were the children and grandchildren of Mary Hart, the colonist. It was further admitted that Robert Carlisle and other heirs of Mary Hart, the colonist, had instituted suit in the District Court of San Patricio county, against Timothy Hart, the intestate and ancestor of plaintiffs, for the purpose of recovering a part of the land in dispute in the year 1847; that the venue was transferred to Nueces county and the suit was abandoned, the papers being lost; that afterwards in 1848, another suit was instituted by the same parties against the same party for part of the same land, which seems to consist only of a petition, and an answer of "not guilty." It is was further admitted, that a third suit was commenced by and and against the same parties for the same purpose in 1853; which consisted of a petition and several continuances, but what was the final disposition of it does not appear.

It does not appear in the statement of facts that either Timothy Hart or the plaintiffs claiming under him, had had actual possession of the land in controversy. The other facts appear in the opinion of the court. There was a verdict and judgment for plaintiffs; a motion for new trial was overruled, and the defendants and intervenors prosecuted their writ of error.

*T. F. McKinney*, for plaintiffs in error—cited 21 Tex. R., 557; Hill on Trustees. § 168, 265, 266; 10 Ves. Jr., 426.

*Pryor Lea*, for defendants in error.

MOORE, J.—Whatever right the plaintiffs in error may have had to the land in controversy, as heirs of their deceased mother, Mary Hart, the colonist, was lost to them by their laches and

negligence. The record shows that the land in dispute was granted in November, 1834, to Timothy Hart, under whom the defendants in error claim, as the only heir of his mother, Mary Hart, the colonist, and that the plaintiffs in error, who were also heirs of said Mary Hart, were of lawful age, and residents of the town of Refugio when said title was issued. It can not be doubted that they must have been cognizant that Timothy Hart had procured the title in his own name at the time or soon after it was issued. At least, as by the ordinary diligence used by most persons in reference to their own affairs, they would, shortly after the issuing of the title have ascertained the fact, the law will charge them with a knowledge of it from the time they might have thus learned it. Yet the equitable title which the plaintiffs in error now seek to enforce, was not asserted by any proceeding which they have prosecuted to judgment, until set up by the answer and petition of intervention filed in this case in December, 1857, a little more than twenty-three years after the grant of the land to Timothy Hart, and several years after his death. It is true the plaintiffs in error had previously, at different times, instituted their distinct suits against Timothy Hart and his personal representative to enforce the same claim which they now make. But each of these suits seems to have been voluntarily abandoned by the plaintiffs. At least, neither of them were prosecuted to a judgment, and there is no sufficient reason disclosed in the record why, if the plaintiffs had confidence in their right of recovery, this was not done. And aside from these abandoned suits, which can hardly be said to give any strength to their claim, the only evidence of an assertion of an interest in the land by any of the plaintiffs in error previous to its being done in this suit, is the fact, that near twenty years subsequent to the date of the title, and after the death of Timothy Hart, Carlisle and wife took possession of it.

It seems to have been held by this court heretofore, (see De Cordova v. Smith, 9 Tex., 129; Tinnen v. Mebane, 10 Tex., 246,) that such equitable rights as the plaintiffs in error are seeking to enforce, are not without the bar of the statute of limitations, and a failure to prosecute a suit for ten years from the accrual of their

23*

cause of action will conclude a recovery. But whether such cases come strictly within the statute, or not, it can not be questioned that it furnishes the analogy by which the courts are guided in adjudicating upon them. And after the lapse of ten years from the accrual of the right, the courts will not grant relief without the proof of facts showing an equitable excuse and justification of the delay. To do so in this case the plaintiffs in error rely upon the depopulated state of the country and disorganized condition of the courts in that part of the State previous to 1847, and, we think, this might be well held as accounting for their failure in prosecuting their claim up to that time; but on the other hand, its long previous existence should, after the organization of the courts and the regular administration of the law, in the county in which the land is situated, which the record shows has been the case since 1847, call for a more prompt and diligent assertion of it, than if it had only then had its origin. The plaintiffs in error, however, delayed attempting an effectual prosecution of their alleged right, notwithstanding the great length of time it had already been in existence, for ten years after the expiration of the time during which they allege there was any pretext for their failure to bring their suit. Under these circumstances, and without other excuse for their delay than has been given, the right asserted by them must be regarded, if not technically barred by the statute of limitations, at least, as a stale demand which a court of equity will not enforce.

There being no error in the judgment of which the plaintiffs in error can complain, it is affirmed.

Judgment affirmed.